### Francis W. Dana *versus* Charles Kemble and Trustee.

Where it was the usage of a hotel, to deposit all letters left at the bar, in an urn kept for that purpose, whence they were sent almost every fifteen minutes throughout the day, to the rooms of the different guests to whom they were directed, it will be presumed that a letter addressed to one of the guests and left at the bar, was received by him.

The defendant not having, upon notice, produced at the trial a letter received by him from the plaintiff, on a certain day, a clerk of the plaintiff testified, that on the day in question he copied a letter from the plaintiff to the defendant, which the plaintiff thereupon took away with him ; and another witness testified, that shortly afterwards, on the same day, he received from the plaintiff a letter addressed by him to the defendant, and delivered the same to the defendant. It was *held*, that such copy was admissible in evidence to prove the contents of the letter not produced.

So, a paper in the handwriting of the plaintiff, purporting to be a copy of a letter from him to the defendant, was *held* to be admissible to prove the contents of such letter, upon its non-production by the defendant after notice, it being testified by a witness, that he had seen an original letter from the plaintiff to the defendant, of the same date as such paper and of similar import, and it being also proved, that a letter from the plaintiff was delivered to the defendant on that day, and that afterwards a sum of money was paid to the defendant by the plaintiff, in accordance with the terms of such paper.

Assumpsit to recover back a sum of money alleged to have been overpaid by the plaintiff to the defendant. The plaintiff died before the trial, and the action was prosecuted by his administratrix.

At the trial, before *Morton* J., it appeared, that the Tremont theatre was leased to the plaintiff in 1833 ; that he engaged the defendant and his daughter to perform for twenty-five nights, from the 15th of April to the 17th of May, 1833, at this theatre ; and that George Barrett was employed by him as the stage manager.

The plaintiff introduced copies of two letters from himself to the defendant, dated, one on the 16th, and the other on the 17th of May, 1833, the plaintiff having, before the trial, given notice to the defendant to produce all letters relating to his engagement, and especially letters of those dates. In the copy dated on the 17th of May, the plaintiff stated, that if he obtained evidence that the defendant was overpaid, he should seek to recover back the excess.

The plaintiff called James Phalen as a witness, who testified,

that he was in the plaintiff's employment as a clerk, in 1833 ; that the copy of the letter of the 16th of May was in his hand-writing, and was truly copied from an original written, at that time, by the plaintiff ; that after the copy was made, the original was sealed up, and the plaintiff went out and took it with him ; that the witness saw another letter written by the plaintiff to the defendant, on the 17th of May, 1833, but did not copy it, and therefore could not say that the writing of that date produced at the trial, which was in the plaintiff's handwriting, was an exact copy of it ; but that he remembered the contents of the original in substance, and that it was to the same effect.

Charles Crafts testified, that he was the box-office keeper of the Tremont theatre in 1833 ; that on the evening of the 16th of May, he received from the plaintiff a letter addressed by him to the defendant, and carried it to the Tremont house, where the defendant was living ; that, on the following morning, there was a conversation between the plaintiff and Barrett, in the box-office, respecting some difficulty in the settlement with the defendant ; that immediately after this conversation, the witness received another letter from the plaintiff, directed to the defendant, and carried it to the Tremont house ; and that the witness delivered the letters either at the bar of the Tremont house or in the defendant's room.

Charles Stetson testified, that he was the bar-keeper of the Tremont house in 1833 ; that it was the invariable usage of the house to deposit all letters left at the bar, in an urn kept for that purpose, whence they were distributed almost every fifteen minutes throughout the day to the rooms of the guests to whom they were directed ; that a great number of letters were left there every day for the boarders in the house ; and that he had never known any case in which a letter so deposited had not reached the person to whom it was addressed.

It also appeared, that a sum of money was paid by the plaintiff to the defendant, on the 17th of May, 1833, after sending a letter, which payment he had refused to make the day before.

The defendant objected, that this evidence was not sufficient to render the writings offered as copies admissible ; but the judge overruled the objection.

The jury returned a verdict for the plaintiff for $ 3028·75.

*Parker*, for the defendant, cited 1 Stark. Ev. 357 ; *Rex v. Pearce*, Peake's Cas. 75 ; *Toosey* v. *Williams*, 1 Moody & Malk. 129 ; Esp. on Ev. 10 ; *Pritt* v. *Fairclough*, 3 Campb. 305 ; *Hagedorn v. Reid*, 3 Campb. 379 ; *Liebman* v. *Pooley*, 1 Stark. R. 167.

*F. Dexter* and *Gardiner*, for the plaintiff, cited *Kelly v. Jackson*, 6 Peters, 632 ; *Taunton Bank* v. *Richardson*, 5 Pick. 441 ; *Hagedorn v. Reid*, 3 Camp. 379 ; *Davis v. Mason*, 4 Pick. 159 ; *Pritt* v. *Fairclough*, 3 Campb. 305 ; 1 Stark. Ev. 356 ; *Liebman* v. *Pooley*, 1 Stark. R. 167 ; *Life & Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.* 7 Wendell, 31.

Shaw C. J. In the present case, the Court have not thought any of the exceptions to the verdict for the plaintiff to be of sufficient weight to be the subject of any particular remark, except those in relation to the admission of the copies of the letters of the 16th and 17th of May.

Whether secondary evidence shall be admitted, where proof is offered to show an original document in the hands of the adverse party, and which he does not produce on notice, is, in the first instance a question for the Court, to determine whether the evidence shall go to the jury ; but when admitted, the jury are ultimately to pass upon its credit. In this case we are satisfied, that there was evidence amply sufficient, of original letters having been delivered, to let in secondary evidence. The evidence, that a letter left at the Tremont house and addressed to Kemble actually reached him, is of the same nature as a similar presumption arising from putting a letter so addressed into the post office, and may even be considered as considerably stronger, inasmuch as there would be less probability of a failure.

Supposing, then, satisfactory evidence of the delivery of the original letters, the more difficult question is, whether these papers were properly submitted to the jury as copies.

As to the sufficiency of the secondary evidence, the rule is well expressed in the case of the *Life & Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.* 7 Wendell, 31. The rule is this ; the party may, in such case, give secondary or parol proof of the contents of such books and papers, if they are shown or ad-

mitted to be in the possession of the opposite party ; and if such secondary evidence is imperfect, vague and uncertain as to dates, sums, boundaries, &c., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence. In examining this subject, it is proper to consider the two questions distinctly ; first, whether it is sufficiently proved, that the letter or document has come to the hands, and is in the possession and power of the opposite party ; and if this is satisfactorily established, then, secondly, what is sufficient evidence of the contents.

In *Pritt* v. *Fairclough*, 3 Campb. 305, the letter-book of the party was admitted, though the clerk, who kept it, had deceased, on proof of his handwriting. *Hagedorn* v. *Reid*, 3 Campb. 379, is an authority to the same effect.

*Hetherington* v. *Kemp*, 4 Campb. 192, was an action on a bill of exchange, and the only question was, whether the defendant had received notice of its dishonor. Evidence was given by the plaintiff, that he wrote a letter at the time, addressed to the defendant, and put it on a table, where letters were usually placed which were to go to the post office. This was held not to be sufficient evidence, that the letter was forwarded ; but if it had been proved that all letters so placed were usually carried to the post office, it might have done. But afterwards, a letter of the defendant being put in, acknowledging the receipt of a letter of the plaintiff of the same date, though without referring to its contents, Lord *Ellenborough* said he would presume this was the letter written to inform the defendant of the dishonor of the bill.

In *Toosey* v. *Williams*, 1 Moody & Malk. 129, the copy was rejected, because the evidence was not sufficient to show that the original had been sent.

In *Davis* v. *Mason*, 4 Pick. 159, a copy of a letter found in the possession of a deceased heir, who had acted as agent for the other heirs, had been admitted as evidence of notice to another party. The Court doubted whether this was properly received, because there was no evidence that any original was ever sent to, or received by such party. But the implication was strong, that if it had been proved *aliunde*, that some letter of the same character had been sent, the copy, found among the papers of the deceased agent, would have been admissible.

In the present case, the copy of the letter of the 16th was well proved by the clerk who made the copy and compared it with the original ; he testifies that Dana sealed, and then took it away, and the box-keeper testifies that, shortly after, he received a letter from Dana, addressed to Kemble, and del'vered it as above stated.

In regard to the other letter, the copy offered was in the handwriting of Dana, and found among his papers. The clerk testifies, that he had seen and read an original of similar tenor. It is very short, containing but a few lines, and those of a character which the witness would be likely to recollect. Had the witness been offered to prove the contents, and had used this paper to refresh his memory, and then testified from memory, without offering the paper, we are of opinion that it would have been competent and satisfactory. But the Court are of opinion, that from the proof that some original of the same date was written and sent, that the defendant has refused, on notice, to produce it, the intrinsic probability, that it was of the purport which the witness states, and which the copy imports, because the writer made a payment on that day, after sending a letter which he had refused to make the day before, the finding of this paper, in the handwriting of the deceased plaintiff, the distinct testimony of the witness, that he had read an original letter, and that it was of the same import as that of the paper produced, the jury might well presume that this was a copy of the letter actually sent.

It must be recollected, that the caution which is sometimes suggested, to induce courts to watch this species of evidence with some care, because otherwise a party might by artful management make evidence for himself, applies to the first part of the proof, namely, that an original has been actually sent and received. In such case, a party could hardly hope to obtain a fraudulent advantage, by preserving a false copy, because it would be always open to detection, by producing the original, which, in the case supposed, is in the power of the other party.

The Court are of opinion, that the evidence was rightly admitted, and that there must be judgment for the plaintiff on the verdict.